# Sikes *v.* The State of Alabama.

*Indictment against Saloon Keeper for Permitting Minor to Play on Billiard Table Connected with Saloon.*

1. *Indictment, when defective because averments relate to time when preferred.* When an indictment alleges that, "defendant *is* the owner or keeper of a saloon in which intoxicating liquors *are* kept for sale, having a billiard table connected therewith, on which the public *can* play, and knowingly permitted a minor to play thereon ; such averments relate to the time when the indictment was found, and it is defective in not charging these attendant facts and circumstances, which make the act of defendant an indictable offense, to have existed at the time the alleged offense was committed.

2. *"Billiard table," defined* —The word, "billiard table," as used in the statute (Code, § 4213), prohibiting saloon keepers from permitting minors to play thereon, includes all tables, with or without pockets, on which the game of billiards could be, and was played, at the time of its enactment.

3. *"Pool tables ;" prohibition includes playing on.* —The statutory prohibition against permitting minors to play on billiard tables includes the tables on which the game of "pool" is now usually played, but on which the game of billiards was played at the time the statute was passed.

4. *"Game ;" what prohibited, for minors, on billiard table.* —The game played thereon need not be that which is technically called billiards, but it must be a kindred game, which is played with balls and cues, or some substitute for them.

5. *" Playing thereon ;" meaning of, in the statute.* —Mere sport or pastime on the table, or even playing with the balls, is not within the statutory prohibition, but there must be a game played, or begun to be played, with the balls and cues, or some substitute therefor, to constitute the offense denounced by the statute.

6. *"Public use of the table ;" what necessary to constitute the offense.* —It is not necessary that the table should be kept for pay, but to make out the offense, it must appear that the table is such an one as the public are invited and permitted to play on, and a charge which withdraws this question from the jury, is erroneous.

APPEAL from Pike Circuit Court.

Tried before Hon. H. D. CLAYTON.

An indictment was preferred, at the Fall term, 1880, of the Circuit Court of Pike county, charging that "James D. Sikes, a person who *is* the owner or keeper of a saloon in which vinous, spirituous, or other intoxicating liquors *are* kept for sale, having a billard table connected therewith, on which the public *can* play, knowingly permitted Charley McCaskill, a minor, to play thereon." On the trial, it appeared, that defendant was the owner or keeper of a saloon, in which intoxicating liquors were kept for sale, and that in connection with said saloon he kept a table called a billiard table, and another called a "pool" table; that within twelve months be-

[Sikes v. The State.]

fore the finding of the indictment he knowingly permitted Charley McCaskill, a minor, to play a game of "fifteen ball pool," on his table called a " pool " table ; that this table was similar in construction to the billiard table, except that it had six " pockets." That the game was played with cues and balls, and by knocking the balls, which were numbered from one to fifteen, into the pockets ; that this table was used exclusively for playing pool, and there had never been a game of billiards played on it. The billiard table had no pockets and the game of pool could not be played on it ; that said minor did not play a game of any kind on the table called a billiard table ; that the game of billiards is quite different from pool ; is played with not more than four balls, and is not a substitute for it. It was proven that formerly the game of billiards was played altogether on tables like that on which Charley McCaskill played, as stated above, but that within the last four or five years these tables with pockets are not used, in many places, for the game of billiards ; that billiard tables are now made without pockets, and it is no part of the game to knock the balls into the pockets as it was formerly ; that where the game is played on a " carrom " table, *i. e.* one without pockets, the game is played by causing the balls to knock against each other, and is counted by rules, giving certain counts on certain contacts of the balls ; but, that in many places, billiards are now played on a table, like the one called a pool table in this case. This being all the evidence, the court, at the request of the solicitor, in writing, charged the jury, "if they believed the evidence they must find the defendant guilty." To the giving of this charge defendant excepted, and requested the court to give the following written charge : "If the jury believe the evidence they must find the defendant not guilty." This charge the court refused to give, and the defendant excepted. The defendant was convicted and fined fifty dollars. The giving, and the refusal of the charges, are assigned as error.

GRIFFIN & WOOD, for appellant.—Appellant was indicted under section 4213 of the Code. This statute prohibits playing billiards, but the minor, in this case did not play billiards, he played a game of fifteen ball pool, and played on a pool table. The statute rightly construed can not be extended so as to authorize a conviction for playing pool. Penal laws are not enlarged by construction to include cases not plainly within their meaning.—*Young v. The State,* 53 Ala. ; 1 Binn. 601. The evidence in the case, however, failed to show that the table was one on which the public could play. It was necessary to aver and prove this fact, which was an essential

ingredient of the offense.   The court should have given the charge requested by defendant.

H. C. TOMPKINS, Attorney-General, for the State.—The offense denounced by the statute, is permitting minors to play on billiard tables.   Were it otherwise evasion would be easy. A change of the name, billiards, and of a few of its characteristics, would accomplish it.   Many games could be played on a billiard table with balls and cues, which would not be billiards, as that game is ordinarily known.   The presumption is, that the legislature intended to prevent minors from playing any game on a billiard table.—Rodgers v. State, 26 Ala. 76.   The table on which the minor played, in this case, was such a one as the game of billiards was formerly played on, and such tables are still, sometimes, used for that purpose, though generally tables without pockets are used.   The game played was billiards within the meaning of the statute, and was only one of the varieties of the game.   The ancient orthography of the word was balyard, composed of ball, and yard, and it means a game played with a ball and a stick. The game played in this case answers more nearly to the definition of billiards, than the one which is played with four balls.

STONE, J.—The indictment in this case is defective.   It charges that " James Sikes, who is the owner or keeper of a saloon in which vinous, spirituous, or other intoxicating liquors are kept for sale, having a billiard table connected therewith on which the public can play," &c.   All these averments relate to the time present, when the indictment was found. They should have been charged to exist at the time the alleged misdemeanor was committed ; for, it is those attendant facts and conditions which make the act charged an indictable offense.—Sherban v. Com. 8 Watts, 212 ; 1 Arch. Pl. (by Waterman, 86,) and notes.   If, in the present case, the indictment had charged that " James Sikes, who was at the time the owner and keeper of a saloon in which vinous, spirituous or other intoxicating liquors were then kept for sale, having a billiard table connected therewith, on which the public could play, did knowingly permit," &c., it would have been sufficient.

In the affirmative charge given to the jury at the written request of the solicitor, the Circuit Court committed an error. It was not positively shown in the evidence that the game was played on a table on which the public could play.   That is, a table kept in connection with the saloon, for the public to play on.   The testimony tends to show the defendant had

[Sikes v. The State.]

two tables—one to play billiards on, and the other, for play-
ing the game of pool. The difference in the structure of the
tables was slight. The billiard table was a modern one,
without pockets. The pool table, on the model of the for-
mer billiard table, having six pockets. Both games were
played with balls and cues, but while billiards was played
with four balls, pool was played with a greater number.
Under the title " Billiards," American Cyclopædia, it is said :
" Billiard tables are divided into three classes; they may
have four pockets, six, or none at all." In another place,
the reader is referred to Michael Phelan's book, " The
Game of Billiards," for "description of other games played
on the billiard table, such as pyramid pool, pin pool, &c."
This work was published in 1873. In Webster's Unabridged
Dictionary, printed in 1870, the game of billiards is described
as being played on a table having pockets at the sides and cor-
ners of the table. Defendant had both a billiard table with-
out pockets, and a table with pockets, but in all other respects,
like the billiard table. " It was further proved and admitted
that, formerly the game of billiards was played altogether on
tables with pockets, like the one on which the game of pool
was played in this case ; but that lately, and within the last
four or five years, in some places such tables with pockets
are not used for the game of billiards, and that billiard tables
are now made and used without pockets." The act under
which the present indictment was found was approved March
11, 1875.—Code of 1876, section 4213. This trial was had
October 22, 1880.

In interpreting statutes, we must endeavor to arrive at the
meaning and intention of the legislature, to be gathered from
the words they have employed. Words are but the vehicle
of thought; and if, since they were employed by the legisla-
ture, they have undergone change, or, if the subject they
refer to has undergone modification since their employment,
we must search for and enforce the sense they bore when the
statute was enacted; for such, we must presume, was the
intention of the law-making power. If when this statute
was enacted—March, 1875—as the testimony shows billiard
tables embraced both classes, those with, and those without
pockets, then both classes are within its prohibition. We
think the legislature intended, in the employment of the
term billiard table, to include all tables on which the game
of billiards was played at the time ; and the language will
also embrace billiard tables under any modification they may
undergo. The legislature intended to regulate and restrain
the demoralizing effect on the youth of the country, of hav-
ing a billiard table and a drinking saloon connected together.

VOL. LXVII.

[The State, ex rel. Washington v. Hunter.]

Giving to the phrase its popular signification, it then embraced tables with or without pockets ; all tables on which the game of billiards could be, and was played.

"Play thereon." It need not necessarily be what is technically called a game of billiards, but it must be a kindred game ; a game played with balls and cue, or mace, or some substitute therefor. Mere sport or pastime on the table, or even playing with the balls, would not fall within the statute. There must be a game played, or begun to be played, with balls and cue or mace, or some substitute therefor, to be within the prohibition.

"On which the public can play." This means that the table is kept, that the public may play thereon. It need not be for pay, but it must be such as the public are invited or permitted to play on. This is a question not of law, but of fact for the jury, and should have been left to them. In not submitting this question to the jury, the Circuit Court erred.

We reverse and remand this cause, that the Circuit Court may quash the indictment. Let the accused remain in custody until discharged by due course of law.