### Hugh Hipp v. The State.

#### No. 2428.   Decided June 3, 1903.

**1.—Gaming—Private Residence.**

Card playing at a private residence is not a violation of law unless such residence is commonly resorted to for the purpose of gaming.

**2.—Same.**

"Residence," as used in the statute, means the domicile occupied as a habitation for the time being.

**3.—Same.**

See opinion for description of a tent or structure held to be a private residence and exempt from the operation of the statute against gaming at a private residence.

Appeal from the County Court of Coleman.   Tried below before Hon. B. F. Rose, County Judge.

Appeal from a conviction of gaming; penalty, a fine of $10.

The opinion states the case.

*Woodward & Baker,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was charged with playing cards in a certain named pasture, and on his trial was convicted and fined $10.

The indictment is sufficient. Russell v. State, 44 Texas Crim. Rep., 465; Hankins v. State, 6 Texas Ct. Rep., 790.

Articles 379 and 381, Acts of 1901, page 26, punish all character of gaming "at any place except a private residence occupied by a family." Article 381 provides that it is not necessary to prove betting occurred upon any of these games where the card playing occurred at a house for retailing spirituous liquors, etc., or in any street, highway or other public place, or in any outhouse where people resort, "or at any place except a private residence occupied by a family; provided that nothing in this title shall be so construed as to prevent the playing of any game for amusement at a private residence occupied by a family." Card playing at a private residence would not be a violation of the law, unless

such residence is commonly resorted to for the purpose of gaming. Art. 379, supra. It is contended the place where the card playing occurred, and which forms the basis of this conviction, was a private residence of a family within the meaning of the statutes above cited. On this phase of the case Scoggins, at whose camp the card playing occurred, testified: That he lived in the tent or under the wagon sheet, and this residence was thus constructed: "I put up a pole and stretched my wagon sheet across it; I then piled brush up at the back end and on each side to keep out the wind, and from this brush I made a brush fence in front to keep out the stock; my wagon constituted a part of this fence, and some cordwood constituted part of it; from the front of the wagon sheet to the fence was about thirty feet; the place where I made the fence was in front of the wagon sheet, and about ten or fifteen feet from the wagon sheet; my bedding and bed clothes were under the wagon sheet, and we slept under the wagon sheet; we cooked out at the fire; I have all my household and kitchen furniture at this camp; the cooking utensils were kept near the fire; I camped in the pasture, doing some grubbing; this camp was the only home I have at this time, and I do not own any house now; my boy, aged about 16 years, lived with me and stayed with me at this camp, and was there the night spoken of; I have no other family with me; a few years ago my wife got a divorce from me, and she has one child with her. * * * I established this camp in November, 1901, a month or so before the playing." This camp was in what is known as the John Roberts pasture, near Glen Cove, in Coleman County.

Sam Scoggins, son of former witness, testified: "I lived with my father, in our camp near Glen Cove, in December, 1901; this camp was all the home we had of any kind at the time of the playing; and all of our bedding and cooking utensils were at the camp." The State's contention is that this was not the residence of a private family within contemplation of the statute of 1901. The word "residence" as used in this article is used in the sense of domicile; a place where the family resides; the domicile occupied as a habitation for the time being. And, in our opinion, under the testimony, the camp occupied by Scoggins and his son was their private residence. It was all they had, as they testified; it was their home for the time being, and under this evidence we are of opinion this was sufficiently the private residence of Scoggins and his son to bring it within the term of private residence set out in the statute. We are further of the opinion that the evidence was sufficient to show that this was a private residence of a family. Scoggins and his son comprise the membership of his family under the facts stated; it seems that he and his wife had been divorced, he took one child and she the other; and of course since that divorce had not lived together. This would have been a sufficient designation of the family under the homestead law, and this evidence sufficiently meets the definition of a family, as we understand it, under the laws of this State. The facts in regard to the playing are, that it occurred just outside

this tent or domicile, and not immediately under it, but within a very short distance, perhaps within ten feet. The statute uses the expression "at the residence of a private family" and "in the residence of a private family" interchangeably; and the fact that it was just outside the domicile instead of on the inside, in our judgment, would make no difference. It was at the residence, and, within contemplation of our statute, parties playing at that point were protected from punishment under this statute. The judgment is reversed and the cause remanded.

*Reversed and remanded.*