## Joe Purvis v. The State.

### No. 696.    Decided May 10, 1911.

**1.—Gaming—Playing Cards—Private Residence—Betting—Statutes Construed.**

Under the law as it now stands it is no violation of the law to play and bet at a game of cards at a private residence, unless it is commonly resorted to for that purpose. See opinion for construction of articles 379 and 388 of the Penal Code.

**2.—Same—Case Stated—Cases Overruled.**

Where the defendant was charged with unlawfully betting and wagering at a game of cards at a private residence commonly resorted to for the purpose of gaming, and there was no evidence that the house was commonly resorted to for the purpose of gaming, the conviction could not be sustained. Overruling Purvis v. State, 52 Texas Crim. Rep., 342; Singleton v. State, 53 Texas Crim. Rep., 625.

Appeal from the County Court of Tarrant. Tried below before the Hon. John L. Terrell.

Appeal from a conviction of unlawfully playing cards at a private residence commonly resorted to for gaming; penalty, a fine of $25.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—The affidavit and information charge that appellant "did then and there unlawfully bet and wager at a game of cards, said game of cards being played at a private residence, said private residence being one then and there commonly resorted to for the purpose of gaming, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

The evidence for the State discloses that some officers went to the house occupied by appellant, and peeping through a crack in the house saw appellant and Shilling sitting opposite each other at a table with some money on the table, and a deck of cards. They thereupon broke into the house and arrested appellant. Appellant testified that they were not playing cards, that one of them was showing tricks at cards. There is no attempt to prove the allegation in the information that the house was commonly resorted to for the purpose of gaming. There was no evidence offered suggesting that it was commonly resorted to for that purpose. If this was a game of cards at which the parties were betting, it is the only attempt to show such card playing. There is also evidence that others were present in the room at the time, but none of them testified. Under this state of facts the statute was not violated.

Article 388 of the Penal Code excepts out of the operation of the

statute playing games with dominoes or cards at a private residence occupied by a family unless the same is commonly resorted to for the purpose of gaming. A distinction is sought to be drawn between playing and betting. The statute does not draw this distinction as we understand it, for it expressly provides that the words "played" and "dealt" have the same meaning attached to them in common language. The word "exhibited" is intended to signify the act of displaying the bank or game for the purpose of obtaining bettors. In common parlance or in common language when it is said that the accused played at cards with reference to our gaming law, it means that he was betting, or if it be a banking game, he exhibited it for the purpose of obtaining bets, and only then is it a violation of the law.

Article 379 of the Code uses this language: "If any person shall play at any game with cards, at any house for retailing spirituous liquors, storehouse, tavern, inn or any other public house, or in any street, highway or other public place, or in any outhouse where people resort, or at any place except a private residence occupied by a family; or if any person shall bet or wager any money or other thing of value, or representative of either, at any game of cards, except in a private residence occupied by a family, and the provisions of this Act that permits gaming in a private residence shall not apply in case such residence is one commonly resorted to for the purpose of gaming, he shall be fined not less than ten nor more than twenty-five dollars." This is the article as amended in 1901, Acts of Twenty-Seventh Legislature, page 26. Under this Act it was not necessary to show that anything was bet when the card playing occurred at a house for retailing spirituous liquors, storehouse, tavern, inn or any other public house, or in any street, highway or other public place, or in any outhouse where people resort, or at any place *except* a private residence occupied by a family. And it made the further provision that nothing in this title shall be so construed as to prevent the playing of any game for amusement at a private residence occupied by a family. Betting in such private residence was not a violation of the statute unless such residence was a common resort.

As above stated, under article 388, as amended March 28, 1907, no person shall be indicted for playing games with dominoes or cards at a private residence occupied by a family unless it is commonly resorted to for the purpose of gaming. That article applies alone to betting and wagering, and shows this by the following language: If any person shall bet or wager at any gaming table, or bank, or pigeon hole or jenny-lind table, or nine or ten pin alley, such as are mentioned in the six preceding articles, or shall bet or wager any money or other thing of value at any of the games included in the six preceding articles, or at any of the following games, and among others it mentions dominoes in all of its different ways of being played, or any game of any character whatever that can be played with cards. So

by the very terms of article 388 in order to be a violation of the law two things must occur where the game is played at a private residence, first, that it must be commonly resorted to for the purpose of gaming, and, second, that there must occur betting or wagering upon the game. These statutes construed together evidently intended to prevent the family residence from being used as a common resort for gambling; and further, that these laws did not intend to punish for playing cards at a private residence, even where betting occurred, unless the private residence was used as a common resort for gaming. These matters have been before this court in quite a number of cases. In Wheelock v. State, 15 Texas, 257, and Lynn v. State, 27 Texas Crim. App., 590, it was held the evidence must show that the house was resorted to on more·than one occasion, and that other persons than those engaged in the game were present. In Fossett v. State, 18 Texas Crim. App., 330, it was held that a house where people commonly resorted for the purpose of gaming is not sustained by evidence of the playing of a single game, and where there was no other evidence that the place was public. In Hipp v. State, 45 Texas Crim. Rep., 200, and Spencer v. State, 49 Texas Crim. Rep., 382, it was held that card playing at a private residence is not a violation of the law unless such residence is commonly resorted to for gaming. There are a great number of these cases in addition to those cited.

We are cited to the case of Purvis v. State, 52 Texas Crim. Rep., 342, in support of this conviction. That indictment simply charged appellant with unlawfully betting and wagering at a game played with cards. It did not charge the offense to have been committed at a private residence as the information does in this case, but in that case Judge Ramsey held that it did not make any difference where the betting occurred, even though it was at a private residence. The question he decided was not in the case under the pleadings.

Singleton v. State, 53 Texas Crim. Rep., 625, is also cited. This language is used in that opinion:

"The other question raised by appellant to the effect in substance that it is not an offense under the laws to bet at cards in a private residence occupied by a private family, was held adverse to appellant's contention in the case of Purvis v. State, 52 Texas Crim. Rep., 342, 107 S. W. Rep., 55. Appellant in his brief contends that it was not the purpose of this Act, and that fairly construed same does not make it an offense to gamble at cards at a private residence occupied by a family, and cites, at some length, the legislative history of the bill, including many references to the house and senate journals. These we have examined and find that the history of the measure as given by appellant is substantially correct, and ordinarily there might have been some special weight to his contention, except for the overshadowing fact that the bill contains intrinsic evidence that the Legislature meant to level against gambling, in all its forms, a sweeping

denunciation and to make gambling at cards under whatever shelter, whether at a private residence, church house, or steeple, an offense against the law, as it is in fact an offense against morals. This Act manifests incontestably the quickened conscience of the State that it is a moral as it should be a legal wrong, for one person to acquire the money or property of another without rendering some service or paying some equivalent for it; that the practice of gambling is demoralizing, inimical to society and destructive to the morals of our youth as well as men of maturer years."

It is not all rules of morality violated that are punishable under the law. While the innate question of morality of the matter perhaps might be intrinsically as strong in one character of gambling as another, if it is to be based upon the theory that you get something for nothing, yet the statute has never, as we understand it, uncovered the sanctity of the family circle or the family residence and made it a violation of the law to play cards and other games, only when there was betting on the games, and not even then unless the proprietor of the home permitted it to be used as a *common resort* for gambling. We do not understand, construing these statutes together, that the Legislature has made it a violation of the gambling law to bet at a private residence unless it is commonly resorted to for that purpose. Article 388 of the Penal Code was enacted only against *betting* under the circumstances mentioned in the statute. Article 379 already referred to makes a distinction between the circumstances there mentioned and the circumstances mentioned in article 388. Under article 379 it was no offense to play a social game, nor even were the parties punishable for *betting* unless the residence was commonly resorted to for gaming. Under article 388 this theory of the law is perpetuated, where it is provided that under this section or article games with dominoes or cards at a private residence occupied by a family shall not constitute an offense except where the house is commonly resorted to for the purpose of gaming, and it is expressly provided that even the parties who play there shall not be indicted for playing or betting unless the house is commonly resorted to for the purpose of gaming. The language, "provided no person shall be indicted under this section for playing said games with dominoes or cards at a private residence occupied by a family, unless the same is commonly resorted to," etc., excludes any idea except that of gambling. This Act of the Legislature was passed only to prevent gambling. It had reference alone to betting and wagering, and was only amended in this respect to get away from the provisions of the same article as it theretofore existed. Under article 388, before it was amended, there was a provision that no person should be indicted under the article for playing any of said games with dice or dominoes at a private residence, and it was held that the word "playing" above quoted in the old article, meant betting, as it always does in the

Vol. LXII Crim.—20.

statute with reference to matters of this sort. Betting at any game played with dice or dominoes, *unless at a private residence,* was inhibited by this statute. Long v. State, 22 Texas Crim. App., 194; Colchell v. State, 23 Texas Crim. App., 584. In Borders v. State, 24 Texas Crim. App., 333, it was held that where betting occurred at a private residence, it was error for the court to instruct the jury if the said house was used commonly and exclusively for gaming, the defendant would be guilty, even though said house was a private residence. The reason for this holding, we think, is obvious, because under no circumstances under the old article could a party be indicted for playing and betting at these games in a private residence, and to meet that objection, which was considered by the Legislature a defect in the law, provision was made that if these games were played and bet at a private residence, he could be indicted if the private residence was commonly resorted to for the purpose of gaming. If the Purvis case and Singleton case, supra, are in point, or thought to be so, as sustaining this conviction, then they are not correct and should be overruled. Our law in all its phases—criminal or civil—has not placed the home or residence of a family on the same plane or ·basis of gambling dens and public places, and in order to bring it within such category, the sanctity of that home must be abandoned to· the extent of making it a common resort for gambling or gaming.

We are of opinion this judgment should be reversed and the cause remanded.

*Reversed and remanded.*