### DR. CAGLE V. THE STATE.

#### No. 4711.   Decided December 5, 1917.

**1.—Gaming—Common Resort for Gaming—Sufficiency of the Evidence.**

While proof of only one game of cards would not be sufficient to show that a place was commonly resorted to for gaming, yet where such place was resorted to twice within a reasonably short space of time for gambling, and the proof tended to show strongly that the place was commonly resorted to for gaming, the evidence was sufficient to sustain the conviction, where the defendant was charged with the violation of article 557, P. C. Distinguishing Purvis v. State, 62 Texas Crim. Rep., 302.

**2.—Same—Evidence—Circumstances—Gambling Resort.**

Where defendant was charged with the violation of article 557, P. C., under the gaming law, there was no error in permitting testimony that the witness had watched a bunch going up that way, to show that the place was resorted to for gaming; neither did the court err in admitting other circumstances of this kind in evidence. Besides the bill of exceptions was defective.

**3.—Same—Argument of Counsel—Discretion of Court.**

The manner of argument by the attorneys is a matter within the discretion of the court, and in the absence of a bill of exceptions showing what the concluding argument of the county attorney was, there was no reversible error.

**4.—Same—Argument of Counsel—Requested Charge.**

Where the argument of State's counsel was a proper comment on the evidence, there was no reversible error; besides, there was no requested charge to withdraw the same.

Appeal from the County Court of Cottle. Tried below before the Hon. W. C. Jones.

Appeal from a conviction of gaming; penalty, a fine of ten dollars. The opinion states the case.

*C. C. Renfro* and *J. M. Hawkins,* for appellant.—On question of insufficiency of the evidence: Sloan v. State, 75 Texas Crim. Rep., 103, 170 S. W. Rep., 156, and case cited in the opinion.

On question of argument of counsel: Patterson v. State, 62 Texas Crim. Rep., 302, 60 S. W. Rep., 560; Purvis v. State, 137 S. W. Rep., 701; Robinson v. State, 69 Texas Crim. Rep., 87, 153 S. W. Rep., 1198.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, Judge.—Appellant was convicted of unlawfully gaming, and assessed the lowest punishment.

By the Act of 1907, p. 108 et seq., the Legislature revised the offenses of unlawfully gaming to a considerable extent. Of this Act it was well said by this court through Judge Ramsey in Singleton v. State, 53 Texas Crim. Rep., 627: "This Act manifests incontestably the quickened conscience of the State that it is a moral as it should be a legal wrong, for one person to acquire the money or property of another without rendering some service or paying some equivalent for it; that the practice of gambling is demoralizing, inimical to society and destructive to the morals of our youth as well as men of maturer years." One section of said Act is now article 557 in our P. C. It enacts: If any person shall bet or wager upon anything in any place where people resort for the purpose of betting or wagering, he shall be fined not less than ten dollars nor more than fifty dollars; provided, no person shall be indicted under this article for playing said games with cards at a private residence occupied by a family, unless same is commonly resorted to for the purpose of gaming.

The prosecution and conviction herein was under said article. The information alleged that appellant on or about June 14, 1917, did then and there unlawfully bet and wager at a game played with cards, said game then and there being played at a private residence occupied by a family, said residence being commonly resorted to for the purpose of gaming. All the evidence shows that the gaming was at the residence of appellant where he resided with his family.

The testimony of Mr. Combest, the sheriff and his deputy, Mr. Bebout, showed that they caught appellant gambling with cards with several others on or about June 14 in one game, and some two or three weeks prior thereto in another game. That the room they caught them gambling in was a little room, with nothing in it except a laprobe, a quilt or two and a bucket of water. That all the gaming was at night. That on this night, June 14, they saw persons going to appellant's house at night and after they got therein went to where they could see them and saw that they were gambling, betting money in a game. Mr. Combest said he thought they played in the house two or three other times; that he watched a bunch go up there, and in fact went up there. On cross-examination he swore: "Yes, I know of other games being played, don't remember when it was, it was possibly a month ago."

He further swore that the quilts were hung over the windows. He and Mr. Bebout swore that they actually caught them gambling in this house twice within a month.

Mr. Huff, one of the parties who was caught in the game on the night of the 14th, swore that he played that game on or about that date, and "I don't know how many times I played cards at this residence, once or twice, though. . . . I believe I played once or twice before the time Mr. Combest caught us." He further swore that every time he went up to Dr. Cagle's house and gambled that he did so upon the invitation of Dr. Cagle. He swore: "Yes, every time I have gone up there to play I have been asked to come by Dr. Cagle. There was a bunch of us in a game up there a while back, five of us, but I don't remember whether I played a game up there before Christmas or not. I have played so many games I can't keep up with them all. I remember being in one game before this one, but don't remember when it was. Sure we bet money on the games."

Appellant himself testified, admitting they gambled on the night of June 14, when the sheriff and his deputy caught him with some four or five other men. He said, in substance, that every time they played a game at his house it was upon his invitation to them for that purpose. He admitted that they had thus gambled twice in his house, stating of the first game: "I guess it has been two months back, about two months ago." And he admitted he put the quilts over the windows because he did not want the neighbors to know what they were playing.

It has several times been held by this court and the Supreme Court when it had criminal jurisdiction that proof of only one game would not be sufficient to show that a place had been commonly resorted to for gaming. (Purvis v. State, 62 Texas Crim. Rep., 302, and cases cited.) But it has never been held that where it was proven that two games had been played within a short period of time it would not be sufficient to show that the place was commonly resorted to for gaming. It might be that if two games only were shown to have been played that might not be sufficient to show that the place was commonly resorted to for that purpose. But the proof in this case goes further than that. It shows positively that Dr. Cagle's house was resorted to twice within a reasonably short space of time for gambling, and in addition, the proof tends strongly to show, and from which the jury could well infer, that it was commonly resorted to for gaming. That not only these two games, but others also were played there within a reasonably short space of time. The equipment of the room, or the lack of equipment, and the lack of household furnishings therein would be one circumstance against him. The testimony of Mr. Huff would also justify the jury to believe that not only the two games in which these parties were caught, were played, but that many others about the same time had been played in said residence. So that upon the whole, the evidence would justify the jury to believe that appellant's residence, and that

room of it in which the game was played, was commonly resorted to for gaming, and justify the conviction.

The court did not err in permitting Mr. Combest to testify that he "had watched a bunch going up that way," objected to by appellant. The bill presenting this question is very meager, but this one sentence of testimony referring to the witness watching persons going up to Mr. Cagle's house was admissible. The evidence tended to show that they went there for the purpose of gaming. Neither did the court err in permitting said witness to testify that he and Mr. Bebout heard money rattling and the voice of Dr. (Cagle) and Elmo Barron, and that the conversation they heard was, it seemed like Paul Huff and Dr. (Cagle) fell out over a game some way, and it seemed like, from what he understood, it was over a bet on the game, and seemed like they were disputing over it, and that he heard Dr. Cagle tell Huff he was a liar, that it was his pot. All this testimony was admissible as showing that the persons were engaged in gambling at the time the sheriff and his deputy caught them, even if the bill is full enough to authorize its consideration. Neither did the court err in permitting the State to ask appellant, on his cross-examination, how long he had known Hardon, and his answer that he had only met him that day. This bill is also too meager to require consideration, but if it could be, no error in asking and in answering the question was committed.

Neither did the court err in permitting the county attorney to ask appellant what purpose he had in hanging the quilts over the windows, and his answer that he did not want his neighbors to know that he played on his wife's account. Neither did the court err in permitting Mr. Combest to testify on behalf of the State in rebuttal that appellant first told him they had only played one game at his house. The bill is too meager to show any error; but it reasonably shows that this testimony was admitted because appellant, in his testimony, denied that he told the sheriff he played but one game in his house. It was admissible for impeachment, but whether for impeachment or not, it being a statement by appellant, was admissible as an admission. Even at that it would be in his favor and not against him.

Appellant has another bill complaining that the county attorney, in his opening argument, said he would rely upon the testimony of certain witnesses, naming them, without discussing said testimony of the law, except by narrating the facts of the State's side applicable thereto, and then, after appellant's attorney had concluded his argument, the county attorney made an original argument discussing all the facts and the law. This is the whole of this bill, except his objections. The manner of argument by the attorneys is a matter within the discretion of the court. This bill shows no reversible error. It does not show what the concluding argument of the county attorney was.

Appellant has two other bills to the argument of the county attorney. In one he complains that the county attorney said: "He comes here with a grown boy he sometimes lets play his hand and asks an honest

jury to turn him loose." In another he complains that the county attorney said: "He comes here and asks you to shield him behind a clause of the statute known as a place commonly resorted to." No charge was asked that either of these expressions should be disregarded by the jury. However, both of them were proper comments by the county attorney and were based on the evidence or inferences therefrom.

The judgment is affirmed.

*Affirmed.*