## TERRITORY *v.* G. YESHITA, ALSO KNOWN AS T. ESHITA.

### No. 1495.

EXCEPTIONS FROM CIRCUIT COURT SECOND CIRCUIT. HON. D. H. CASE, JUDGE.

SUBMITTED OCTOBER 18, 1923.          ,          DECIDED OCTOBER 25, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

LICENSES—*billiard tables—pool tables.*

A table similar in all respects to an ordinary billiard table except that it has six pockets and is used for playing the game called pool is a "billiard table" within the meaning of section 1995, R. L. 1915, as amended by Act 103, S. L. 1919, and is subject to an annual license fee.

CRIMINAL LAW—*keeping a billiard table for hire without a license.*

Under a complaint charging that defendant kept a billiard table to be used for hire without having a license so to do, where it appeared that the table kept was used for playing the game known as pool and was in all respects similar to an ordinary billiard table except that it had six pockets, *held* that such a table is a "billiard table" within the meaning of section 1995, R. L. 1915, as amended by Ac 103, S. L. 1919, and defendant was therefore properly found guilty as charged.

### OPINION OF THE COURT.

Defendant was charged in the district court of Wai-

luku, Maui, with keeping a billiard table to be used for hire or pay without having a license so to do, contrary to the provisions of sections 1995 and 1996, R. L. 1915, as amended by Act 103, S. L. 1919. At the trial before the district magistrate the defendant and the county attorney agreed that the facts in the case were as follows:

"That T. Yeshita, the defendant in the above entitled cause, is the proprietor of certain rooms on Market street, in the town of Wailuku, County of Maui, in which are 2 tables open to the public for use for hire or pay for playing games as hereinafter described; that the said tables are about 5'x10' and 3' in height with a top made of slate slabs closely fitted together leveled and covered with a heavy green cloth known as billiard cloth, tightly stretched over the same; a bevel cushioned rail around the edge of the table with six pockets, one at each corner and one in the middle of each side; that the said tables are used for playing various games with cues and balls; that the said tables are in all respects the same as what are commonly called billiard tables except that they are provided with the aforementioned side pockets and are more commonly used for playing the game or games called 'pool;' that no license to keep the said tables for hire has been procured by the said T. Yeshita for the license period beginning July 1st, 1922.

"That billiards is a game played with one red and two white balls made of ivory. The purpose of the game to keep the balls on the table all the while, while pool is a game played with sixteen balls one of which has no numeral thereon and is called the cue ball, and the others are numbered from one to fifteen consecutively. Billiards cannot be played on a both [table] on which there are pockets, for the reason that the balls must be on the table all the time, while in pool the balls from 1 to 15 must be put into the pockets on the table."

Upon the agreed facts the district magistrate found defendant guilty and imposed a fine. Upon appeal to the circuit court of the second circuit the case was tried jury waived upon the above agreed statement of facts and the circuit court found defendant guilty and sentenced him to pay a fine of ten dollars and costs of court. Defendant has brought the case here upon exceptions, the gist of which is that, inasmuch as it appeared from the agreed statement of facts that the defendant kept a "pool" table and not a "billiard" table, a conviction for keeping a billiard table was unauthorized.

Sections 1995 and 1996, R. L. 1915, as amended by Act 103, S. L. 1919, read as follows:

"Section 1995. Fee. The annual fee for a license to keep a billiard table or a bowling alley, to be used for hire or pay, shall be five dollars for each table or alley; provided, that no license to keep a billiard table shall be issued to any minor or to any person who has been convicted for gambling."

"Section 1996. Regulations, forfeiture. No male or female person under the age of eighteen years shall be permitted to be or remain in or about any premises where licensed billiard or pool tables are had and operated, and no intoxicating liquor shall be allowed, furnished or possessed in such premises. In addition to these conditions the treasurer of each county or city and county shall have power to prescribe other regulations for the keeping of billiard or pool tables and bowling alleys as he may deem necessary for the public good. Any person violating the above conditions or any of the regulations so prescribed, shall be fined not more than two hundred and fifty dollars, and shall, in the discretion of the court, suffer a forfeiture of his license."

The opinion of the circuit judge, after reciting the foregoing, reads as follows:

"The court is called upon to determine whether *tables* such as are referred to and at some length described in the agreed statement of facts are 'billiard tables' within the meaning of the provisions of section 1995, Revised Laws of Hawaii, as amended by Act 103, Session Laws of 1919.

"From Webster's New International Dictionary of the English Language; based on the International Dictionary of 1890 and 1900—now completely revised in all departments, we read: 'Billiards: Any of *several* games played on an oblong table, surrounded by an elastic ledge or cushions, with balls which are impelled by a cue. In most games three balls are now used, a red, plain white, and spot white. In the English game the standard table is 12 x 6 ft., and has six pockets, the balls are 2-1/16 inches in diameter, and points are scored by caroms and by winning and losing hazards. In the American or French game the standard table is 10 x 5 ft., and is without pockets, the balls are 2-3/8 inches in diameter, and points are scored by caroms only. Smaller tables are often used. In the balk line game chalk lines are drawn parallel to and at a certain distance, usually 14 or 18 inches, from each cushion. If the two object balls rest in one of the resulting rectangles (except the center one) at least one object ball must be driven out at the second shot (two shots in) or at each shot (one shot in). The Cent. form, billiard, is used atributively, as in billiard table, billiard cue, billiard pool, etc. Pool Table: A kind of billiard table on which pool is played. The standard American table has six pockets. 1. Pool: The stake played for in certain games, the aggregate stake to which each player has contributed; also the receptacle for the stakes, or formerly, the players. 2. Pool: A game at billiards, in which each of the players stakes a certain sum, the winner

taking the whole; also in public billiard rooms, a game in which the loser pays the entrance fee for all in the game.'

"In the Encyclopaedia Britannica billiards is defined as follows: 'An indoor game of skill, played on a rectangular table, and consisting in driving of small balls with a stick called a cue either against one another or into pockets. The principal games are three in number—billiards proper, pyramids and pool; and from these spring a variety of others.'

"The object of a player in each game, however, is either to drive one or other of the balls into one or other of the pockets, or (only in billiards proper) to cause the striker's ball to come into successive contact with two other balls. The former struck his own as a hazard, the latter as a cannon. When the ball is forced into a pocket the strike is called a winning hazard; when the striker's ball falls into a pocket after contact with the object ball the stroke is a losing hazard. The game of billiards proper consists of the making of winning and losing hazards and cannons.

" 'Pool,' a game which may be played by two or more persons, consists entirely of winning hazards, each player subscribes a certain stake to form the pool, and at starting has three chances or lives.

"The Encyclopaedia Britannica also states that French and American billiards is played on a pocketless table, but that the English table with six pockets is also occasionally to be found in America; and that pool is played in America on a six pocket table with fifteen balls, each bearing a number. In the Encyclopaedia Britannica the subject of pool is treated only under the title 'billiards.'

"In the Encyclopaedia of Law and Procedure, volume 5, page 705, billiards is defined as—'The game played by two or more persons, on a rectangular table of special construction, with ivory balls, which the players, by

means of cues cause to strike against each other.' And in the same work, volume 31, page 911, 'pool' is defined as: 'A game played on a billiard table with six pockets, by two or more persons.' 'A kind of billiards.'

"In the case of State *vs.* Johnson, et als., 108 Ohio, pages 245-47; cited in 79th North Western Reporter, page 62, in speaking of the games of 'billiards' and 'pool' the court says: 'If the games be different, both are played on tables which are invariably described by the lexicographers as billiard tables of four or six pockets, and these fix the character of the room in which they are kept. Thus the Century Dictionary defines 'pool' as a game played on a billiard table with six pockets. The Standard Dictionary—'One of the various games played on a six pocket billiard table.' It is treated in Webster's International Dictionary and Encyclopaedia Britannica as a kind of billiards. We readily defer to the supreme court of Indiana in distinguishing between the games to be played on the table; but the definition of the lexicographers and encyclopaedias to the effect that, whatever the game, the pocketed and pocketless are alike billiard tables, cannot be ignored.'

"In the opinion of the court the tables in question, regardless of the games played thereon, were billiard tables. In passing upon the question as to whether the phrase 'billiard tables' includes pool tables, the supreme court of Alabama says: 'Billiard Tables' as used in Code section 4213, prohibiting saloon keepers from permitting minors to play on 'billiard tables,' includes all tables with or without pockets on which the game of billiards could be or was played, and tables which were usually used in playing the game of pool. Sikes *vs.* State, 67 Ala. 77.

"The General Statutes of Kansas gave city councils power to suppress 'billiard tables,' *but,* made no reference

to pool tables by that name.   In passing upon the right of the city of Clearwater, Kansas, to forbid, by ordinance, the maintenance of pool tables, the supreme court said: 'The second objection to the ordinance is that the authority for the prohibition of public pool tables must be found, if at all, in section 1129 of the General Statutes of 1901, which gives the city council power to suppress billiard tables, but makes no reference to pool tables by that name. Evidence was. introduced to show that the game of pool is not the same as that of billiards, and that a pool table differs from a billiard table in having pockets.   The argument is made in behalf of the defendant that the ordinance is broader than the statute, that the term 'billiard table' does not include a pool table, and that consequently the city was without authority to restrict the use of the latter. This contention derives some support from Squier *v.* State, 66 Ind. 317, where a conviction under a statute forbidding the owner of a billiard table to permit a minor to play thereon was set aside because the evidence showed that the game played was pool.   The present question is affected, however, by a consideration which, if applicable to the Indiana case, does not appear to have received the attention of the court.   Evidence was introduced that billiard tables were formerly made with pockets.   The same fact is shown by the standard dictionaries and encyclopaedias.   Just when the change took place may not be clear, but the testimony indicated that it took place 30 or 35 years ago.   The statute in question was passed in 1871, but is a re-enactment of the fifth subdivision of section 29, c. 26, p. 85, of the laws of 1869.   The statute must be construed in the light of the approved usage of words at the time of its enactment, notwithstanding any subsequent changes.   The argument upon the precise proposition involved is thus presented in Sikes *v.* State, 67 Ala. 77: 'In interpreting statutes, we must endeavor to arrive

at the meaning and intention of the legislature, to be gathered from the words they have employed. Words are but the vehicle of thought; and if, since they are employed by the legislature, ·they have undergone change, or if the subject they refer to has undergone modification since their employment, we must search for and enforce the sense they bore when the statute was enacted; for such, we must presume, was the intention of the law making power. If when this statute was enacted—March, 1875— as the testimony shows, billiard tables embraced both classes, those with and those without pockets, then both classes are within its prohibition. We think the legislature intended, in the employment of the term 'billiard table' to include all tables on which the game of billiards was played at the time; and the language will also embrace billiard tables under any modification they may undergo.' Even at the present time the word 'billiard table' is employed as a generic term, including the form adapted to the playing of pool. This is illustrated by the definition of 'pool' in the Century Dictionary as 'a game played on a billiard table with six pockets by two or more persons.' Whatever meaning might be attached to the term, if found in a law recently enacted, we think as used in the statute of 1869 it was sufficiently compre-'hensive to authorize the ordinance here involved, and that the conviction was properly sustained.'

"The attention of the court has been called to Corpus Juris, volume 27, subject 'Gaming,' section 11, page 971, which reads: 'Billiards: Billiards is a game played on a rectangular table covered with green cloth with small ivory balls, which the player aims to drive into hazard nets or pockets at the sides and corners of the tables by impelling one ball against another with maces and cues, according to certain rules of the game. As a general term the word 'billiards' has not been regarded as a generic

term broad enough to cover any game that may be played upon a billiard table. It seems that the word should be construed in its ordinary sense, as it is commonly understood, and not to include a game commonly known, not by that name but by another, such as 'pool,' 'pin pool' or 'fifteen-ball pool.'

"But, turning to section 96, same subject under discussion, page 987, and we read: 'Billiard Table: This is a table on which to play billiards, a rectangular table with cushions on the sides, with four pockets, one in each corner, and on which games are played with cues and balls. Billiard tables are divided into three classes; they must [may] have four pockets, six or none at all. While there has been a change in the form and use of tables on which the game of billiards proper is played from tables with pockets to tables without pockets, yet even at the present time the word 'billiard table' is employed as a generic term, including not only tables on which the game technically called billiards is played, but also tables adapted to the playing of a kindred game, such as pool.' The foregoing section citing the several authorities referred to in this decision.

"As to the application of the law as laid down in the case of Territory *v.* Ah Goon, reported in 22 Haw. page 31: If the statute read that 'any person who shall play at the game of billiards shall be guilty of a misdemeanor, and shall be punished,' etc.; and, upon trial, the proof showed defendant was playing the game of pool, the law as declared in Territory *v.* Ah Goon might be applicable.

"The law for the violation of which defendant was arrested was and is directed against the keeping of a billiard table for hire or pay, and not against the playing of the game of billiards or pool or such games as may be played on a billiard table. * * *

"On the strength of the authorities and for the reasons

herein stated, the court is of the opinion that the types
of tables referred to and described in the agreed state-
ment of facts were 'billiard tables' within the meaning
of the provisions of section 1995, Revised Laws of Hawaii,
as amended by Act 103 of the Session Laws of 1919; and
upon the facts as submitted the defendant was and is
guilty as charged.

"The court, therefore, adjudges the defendant guilty
as charged, and sentences him to pay a fine of $10.00 and
costs of court taxed at $6.70."

We are of the opinion that the decision of the circuit
court is correct and we adopt the same as the opinion
of this court.

The exceptions are overruled.

*E. R. Bevins,* County Attorney of Maui, and *Wendell
F. Crockett,* Deputy County Attorney of Maui, for the
Territory.

*E. Murphy* for defendant.