

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable M.O. Flowers
Secretary of State
Austin, Texas

Dear Sir:            Attention of Mr. Will Mann Richardson

Opinion No. 0-2866
Re: Corporations - Purpose clause -
Innocent sports.

Your request for opinion has been received and
carefully considered by this department. We quote from your
request as follows:

"An application for a charter for the Texas
Bridge Club has been received. It seems from the
wording of the purpose clause that this corporation
is seeking to come within the innocent sports sub-
division of Article 1302. The wording of the pur-
pose clause is as follows:

"'The purpose for which it is formed
is to support and maintain a club, con-
sisting of a limited number of persons,
desiring to engage in games of cards for
mutual amusement and recreation and to ac-
quire technical skill and knowledge of
Whist, Bridge and other games in which
such skill and knowledge are necessary to
a proper enjoyment of such sport. The
meetings of said club to be held at 703
Richmond Road, Houston, Texas or at the
residences of other members of said club
as the members may from time to time deter-
mine.'

"We would appreciate an opinion from you as to
whether such purpose clause is authorized in Texas,
and whether it comes within the innocent sports sub-
division of Article 1302."

The purposes for which private corporations may be
formed in the State of Texas are enumerated in Article 1302,
Vernon's Annotated Civil Statutes. Section 9 of said article

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable M.O. Flowers, Page 2

reads as follows:

"9. To support and maintain bicycle clubs, and other innocent sports."

Webster's New International Dictionary, 2nd Edition, defines the terms "bridge", "whist" and "sport", as follows:

"Bridge - A card game derived from whist, etc.

"Whist - A card game for four players played with a pack of 52 cards.

"Sport - Some particular play, game, or mode of amusement; as: (1) a diversion of the field, as fowling, hunting, fishing, racing, games, esp. athletic games, and the like; also any of various similar games or diversions usually played under cover, as bowling, rackets, basketball, etc."

The case of Smith vs. Wortham, 157 SW 741, held that under Rev. Stat. 1911, Article 1121, subd. 36, permitting the formation of bicycle clubs and "other innocent sports," a corporate charter naming in its purpose clause an automobile club, the purpose and object of which shall be to promote innocent sports by means of automobiles, was insufficient, since a definite innocent sport must be named, which the charter did not do. The case also held that the rule of "ejusdem generis" did not apply, since the term "bicycle clubs" was used in the sense of a distinct and individual innocent sport, complete within itself and separate in its identity. The case also held that the subdivision of the statute was not invalid because delegating by the quoted clause "other innocent sports" legislative power to the Secretary of State to determine what corporations may be formed. We wish to point out however that since the rendition of said case, the Legislature in 1929 passed Section 91 of Article 1302, V.A.T.C.S., which authorizes the creation of corporations for the purpose of forming automobile clubs.

Article 615, Vernon's Annotated Texas Penal Code, reads as follows:

"Whoever shall play, or bet or wager any money or other thing of value, at any game of cards at any place not a private residence occupied by a

Honorable M.O. Flovers, Page 3

family, shall be fined not exceeding fifty dollars." (Underscoring ours)

It is an offense to play cards even without betting at any place, except at a private residence occupied by a family. See the following cases:

Elliott vs. State, 127 SW 547;
Borders vs. State, 6 SW 532;
Gallegas vs. State, 95 SW 124;
Lamar vs. State, 95 SW 511.

Article 617, Vernon's Annotated Texas Penal Code, reads as follows:

"The provisions of the two preceding articles which permit gaming at a private residence occupied by a family shall not apply in case such residence is one commonly resorted to for the purpose of gaming, nor where the game played is a banking game."

This department held in an exhaustive conference opinion written by Hon. C.M. Cureton, First Assistant Attorney General, (later Chief Justice of the Supreme Court of Texas) dated February 20, 1915, printed in 1914-1916, Reports of the Attorney General, pages 454-470, ind., that pool and billiard clubs could not be chartered under the purpose clause which authorized the formation of corporations "to support and maintain bicycle clubs, and other innocent sports' because said amusements of pool and billiards were "games" and not "sports." We quote from said opinion as follows:

"The games of pool and billiards as commonly understood are not sports in the usual and ordinary sense of that word, but are games and therefore are not embraced within the terms and provisions of subdivision 56 of Article 1121.

"The use of words and phrases and the meaning attached to them may be determined by their statutory use, their judicial, colloquial and technical use and by their literary and historical employment ....

"The courts of other states have likewise constantly and continuously referred to the amusements known as pool and billiards as games and classed

Honorable M.O. Flowers, Page 4

these amusements, <u>as does our statute, along with cards, checkers, etc....(Underscoring ours)</u>

"The City of Clearwater vs. Bowman, 82 Pac., 546.
"Squier vs. State, 66 Ind., 317;
"Sykes vs. State of Alabama, 67 Ala., 77.
"United State vs. McKenna, 149 Fed., 252.
"Ellison vs. Lavin, 66 L.R.A., 604.

"The word 'sport' is usually confined to field sports, though of course it may have other meanings, but its usual signification is that suggested.

"White vs. Western Assurance Company of Toronto, 54 NW 193.
"Wirth vs. Calhoun, 89 NW, 785.

"In the first stated case the court refers to a sportsman, quoting the Century Dictionary as follows:

"'One who sports, a man who practices field sports, especially hunting or fishing, usually for pleasure and in a legitimate manner.'

"In the last named case the question was whether or not a theatrical performance, consisting of music and dancing and feats of contortion, was sport or sporting. The statute under examination read, so far as it is necessary to refer to the case, as follows:

"'If any person of the age of fourteen years or upward shall be found on the first day of the week, commonly called Sunday, sporting, rioting, quarreling, hunting, fishing or shooting he or she shall be fined, etc.'

"The statute went somewhat further than the quotation does in also making it an offense to labor at common labor on Sunday. The court, after disposing of the question and in holding that the theatrical performance was not embraced within the terms of common labor, then took up the issue as to whether or not it fell within the word 'sporting', as used in

this statute, and quoted with approval the definition of 'sport' as defined in Webster, among other things saying:

" : "Sport" is defined by Webster as follows: "To divert; to make merry; to represent by any kind of play; to exhibit or bring out in public, as to sport a new equipage; to play; to frolic; to wanton; to practice the diversions of the field; to trifle." According to the same lexicographer, "sporting" means "indulging in sport; practicing the diversions of the field." If we use the definition of "sport," instead of the term itself, in defining thè term "sporting", the definition would be as follows: (1) to indulge in diverting; (2) to indulge in merry-making; (3) to indulge in representing by any kind of play; (4) to indulge in being out in public, as to indulge in sporting a new hat or carriage; (5) to indulge in play or frolic; (6) to indulge in wantonness; (7) to indulge in trifling; (8) practicing the diversions of the field. It is obvious, we think, that the Legislature did not employ the term in the sense of the first, second, fourth, fifth or sixth definition above given. They are too broad. They include too much. If adopted in the construction of the statute, our Sunday law would rival the most stringent of the blue laws. The third is a sense in which the term is rarely used, and is illustrated in the Century Dictionary by a line from Dryden: "Now sporting on the lyre the loves of youth." As thus illustrated, it, also, is too broad, as it includes many common and innocent diversions. The seventh has no application to this case. This leaves the eighth, "practicing the diversions of the field," as the definition the lawmakers probably had in mind when the law was enacted. This appears still more probably on the examination of other definitions. In the Century Dictionary the general meaning of "sport-

ing" is said to be "engaging or concerned
in sport or diversion"; the specific mean-
ing, "interested in or practicing field
sports."' (89 N.W., 787)

"From the foregoing it is seen that the court
took up each of the several definitions of sporting
as given in Webster and concluded that the Code under
which the prosecution was brought could not refer to
any of the definitions there given except the eighth
one which was 'practicing the diversions of the field,'
and it is this definition which it seems to us the
Legislature had in mind in providing that corpora-
tions might be chartered for the purpose of promoting
bicycle clubs and other innocent sports.

"The Supreme Court of this State has already
held that in drafting the purpose clause of a charter
under this subdivision a definite sport must be des-
cribed or set forth.

"Smith vs. Wortham, 157 S.W. 741.

"The court in an opinion rendered in the Smith
case referred to baseball as a well recognized and
definite innocent sport. It seems to us that this
case is persuasive of the insistence which we make
that the word 'sports,' as used in this statute, does
not refer to games, but refers to those classes of
amusements which have been recognized from time
immemorial as sports, not to that class such as
cards, dice, pool and billiards, which have been
from time immemorial classified as games."

This department held in an opinion written by Hon.
A.R. Stout, Assistant Attorney General, dated January 12, 1934,
recorded in Vol. 353, pages 302-307, inclusive, that the
Metropolitan Bridge Club of Houston, Texas, was not entitled
to receive a charter from the Secretary of State under subdi-
vision 9 of Article 1302 of the Revised Civil Statutes. This
opinion referred to Judge Cureton's holding in the opinion
above quoted. We quote from Judge Stout's opinion as follows:

"It has long been a departmental custom and
practice to refuse to grant charters similar to
the one in question. This practice and custom
is due some weight, especially if there should be

any doubt about the matter. Moorman v. Terrell, 202 S.W. 727, 109 Tex. 173; Edwards v. James, 7 Tex. 372; Fire Ass'n. v. Love, 108 S.W. 810, 101 Tex. 376; Walker v. Meyers, 266 S.W. 499 (Tex. Sup.). In the judgment of the writer, there is no doubt, for one reason, on account of the most stringent laws that we have always had against cards and gaming. Moreover, if the point in question should be doubtful, the opinion of the then Attorney General, now Chief Justice of our Supreme Court, is, or should be, persuasive. Harris County v. Hammond, 205 S.W. 445 (writ refused).

"Many years have passed since then. Many Legislatures fresh from the people have come and gone. Our statutes have been recodified and this ruling of over eighteen years ago has not been departed from, yet during all of this time, subdivision 9 has not been changed one whit.

"This is not all. While many sports might be games and many games might be sports, bridge or card playing is one pleasure or pastime that has always been considered and designated as a 'game.' The writer has failed to find where it has been designated otherwise. It is a card game that is an 'offshoot' of the old English game of whist and that is all there is to it. About it, the lexicographers say:

"'A card game resembling whist.' Webster's New International Dictionary.

"'A game similar to whist.' Funk and Wagnalls New Standard Dictionary.

"Bridge is just as much a game as is poker and they are both universally spoken of as games. As one who has some knowledge of both Hoyle and Mr. Culbertson, no instance can be recalled of where either of them ever applied anything other than the word 'game' to this great pastime.

"At the time subdivision 9 was first passed, bridge was not played much, if even heard of. Poker, however, then as now, was still extant. In

Honorable M.O. Flowers, Page 8

fact, we had then, as now, stringent laws against
it, and as late as 1911, we find Judge Davidson
saying:

> "'That the practice of gambling is
> demoralizing, inimical to society, and
> destructive to the morals of the youth
> as well as men of maturer years.' Purvis
> v. State, 137 S.W. 701.

'The writer does not believe that any good law-
yer would seriously contend for long that a poker
club could be organized under subdivision 9, yet in
so far as the laws of our Legislature provide, bridge
and poker have the same legal standing or occupy the
same station, legally.

"Article 615 of our Penal Code of 1925 provides:

> "'Whoever shall play, or bet or
> wager any money or other thing of value,
> at any game of cards at any place not a
> private residence occupied by a family,
> shall be fined not exceeding fifty dol-
> lars.'

"In other words, whoever shall play . . . at any
game of cards . . . shall be fined not exceeding
fifty dollars, and the only exception is a private
residence, which one may play cards or game with cards
in, so long as he does not commonly resort to it for
that purpose. If he commonly resorts to such private
residence for the purpose of gaming, then his conduct
is illegal just as it would be in any place save a
private residence, whether he placed money or value
on the cards or not. Articles 615 and 617 of 1925
Penal Code; 20 Texas Jurisprudence, p. 619, para. 14;
Gallegas v. State, 95 S.W. 123; Purvis v. State, 137
S.W. 701. The above cited authorities serve to illus-
trate the principle, although the books are full of
analogous ones. Our Legislature has no doubt always
proceeded upon the theory that:

> "'Cards are as much a gambling device
> as any device yet invented.' Eubanks v.
> State, 5 Mo. 451. This statement from the
> Supreme Court of Missouri, is in keeping
> with general experience and would certainly

Honorable M.O. Flowers, Page 9

be admitted by all men, without proof, argument or discourse.

"Since it is against the law to play cards, whether with or without stakes, in any place, save a private residence that is not commonly resorted to for the purpose of gaming, it is, therefore, both clear and elementary that the corporation could not be chartered for a purpose that was not lawful. 146 C.J., p. 126, para. 119.

"It is contemplated by the law that the corporation, if a charter were granted, should have a place of business. Article 1304. Ordinarily, this place would be the headquarters of the 'club.' It would be here that the members would usually meet and play bridge, yet this would be unlawful, and in strict legality, the law could not and would not countenance it. Should it be argued that bridge would only be played in private homes, occupied by a family, then there would be no need whatsoever for a corporation. As has been stated, it has long been a departmental rule to not grant charters such as the one in question. We know of no exception to the rule and have been unable to find any case that would sanction the granting of a charter, such as the one applied for, under Texas law."

The purpose clause of the proposed corporation states that the meetings of the club will be held at 703 Richmond Road, Houston, Texas, or at the residences of other members of said club as the members may from time to time determine and that cards will be played at said places. Said purpose clause does not disclose whether or not 703 Richmond Road is a private residence occupied by a family nor does it disclose whether or not the other residences are private residences occupied by families. The playing of cards by said proposed club members may or may not be illegal, dependent upon all the facts and circumstances involved, under the rules of law laid down above in this opinion. However, this department will not make any assumption as to whether or not said club will or will not violate the law with reference to playing cards or gaming. But regardless of whether or not the games played are played in an illegal manner they

Honorable M.O. Flowers, Page 10


certaily cannot be classed as "innocent sports" within the contemplation of subd. 9 of Article 1302, V.A.T.C.S., supra.

In view of the foregoing authorities, it is the opinion of this department that "bridge", "whist" and other card games are "games" and are not "innocent sports" within the contemplation of subdivision 9 of Article 1302, V.A.T.C.S., supra, and that said proposed charter should be refused by the Secretary of State.


Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Wm. J. Fanning
Assistant


WJF:AW

APPROVED NOV 15, 1940

ATTORNEY GENERAL OF TEXAS

